UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| IN RE<br><br>DEVON NIGEL FREELAND and<br>REGINA MARIA FREELAND<br><br>                       Debtors. | Bankruptcy Case<br>No. 14-61439-fra7 |
| DEVON NIGEL FREELAND and<br>REGINA MARIA FREELAND,<br><br>                       Plaintiffs,<br><br>    vs.<br><br>UNITED STATES DEPARTMENT OF<br>EDUCATION, et al,<br><br>                       Defendants. | Adversary Proceeding<br>No. 14-06102-fra<br><br><br><br><br><br>MEMORANDUM OPINION |

## I. INTRODUCTION

This is an action by Debtors Regina and Devon Freeland seeking a declaration that their student loan debts should be discharged because requiring repayment would constitute an undue hardship. 11 U.S.C. § 523(a)(8).[1] Their claim respecting the debt owed to the United States Department of Education was resolved short of trial, and a judgment reflecting the parties' agreement has previously been entered. The

---

[1] All statutory references herein, unless otherwise stated, are to the Bankruptcy Code, 11 U.S.C. § 101 *et seq*.

Page 1 - MEMORANDUM OPINION

claim with respect to the loans now held by Education Credit Management Corporation[2] were tried on July 1, 2015.

Having reviewed the testimony, evidence, and arguments of the parties, the Court now concludes that the Debtors have failed to meet their burden of proving that the student loan debts should be discharged.

## II. BACKGROUND

The Plaintiffs are in their mid-30's, living in Marion County, Oregon, with their two children. They are in reasonable, though not robust, health. Mr. Freeland is currently employed as an engineer. Mrs. Freeland is not employed outside the household.

Mr. Freeland earns just over $82,000 per year before deductions for taxes, insurance, and other typical withholdings. He is paid every two weeks: each pay period he receives between $2,296 and $2,214 net of withholding for taxes, health and dental insurance, life insurance, and the like. (Exhibit 14.) With twenty-six paychecks per year, his annual net is between $57,564 and $59,696. In addition, for the last two tax years the Freelands received federal tax refunds of $866 and $1,277 respectively.

The Plaintiffs' budget, set out in their Exhibit 13, discloses "steady monthly expenses" of $4,357, or $52,284 annually. This includes $1,038 for mortgage payments and $1,400 per month for groceries. Plaintiffs acknowledge that a portion of their "steady" expenses is used to assist Mrs. Freeland's mother, who does not reside with them.

In addition to the "steady" expenses, Plaintiffs Exhibit 13 lists "variable" expenses ranging from a low of $495 per month to a high of $4,345 per month. The higher items include a spread of $50-$1,500 for car maintenance, $100-$300 for "emergency co-pays," $20-$200 for replacement of durable goods, $50-$300 for "assisting elders," and, significantly, $20-$400 to repay loans for car repairs and medical expenses.

The Plaintiffs' current obligation to ECMC, which is indisputably subject to Code § 523(a)(8), is $148,457.74. Defendant ECMC presented evidence that Plaintiffs are eligible for enrollment in the Income

---

[2] Education Credit Management Corporation (ECMC) is the successor in interest to the lenders, other than the Department of Education, originally named in the complaint.

Page 2 - MEMORANDUM OPINION

Based Repayment plan (IBRP), which provides for payments on their consolidated debt in installments as low as $296.56 per month. *See* 20 U.S.C § 1098e and 34 CFR § 685.221.

### III. DISCUSSION

Debts incurred with respect to student loans and related educational benefits are excepted from discharge in bankruptcy proceedings, "unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependants." 11 U.S.C. § 523(a)(8). Courts of the Ninth Circuit establish eligibility for discharge under this section by applying the so-called *Brunner* test set out in *Brunner v. New York State Higher Education Svcs. Corp.*, 831 F.2d 395 (2nd Cir. 1987). See *United Student Aid Funds, Inc. v. Pena (In re Pena)*, 155 F.3d 1108 (9th Cir. 1998)(adopting *Brunner* test in Ninth Circuit). The *Brunner* test consists of three parts: the debtors must demonstrate that: (1) they cannot, based on their current income and expenses, maintain a minimal standard of living for themselves or their dependants if they are required to pay the loans; (2) additional circumstances exist which make it likely that the state of affairs satisfying the first persist for a significant portion of the repayment period; and (3) the debtors have made good faith payments to repay the loans. The burden of proving undue hardship is on the debtors, and they must prove all three elements before discharge can be granted. *Rifino v. United States (In re Rifino)*, 245 F.3d 1083 (9th Cir. 2001), *Educational Credit Management Corp. v. Mason*, 464 F.3d 378 (9th Cir. 2006).

The first prong of the *Brunner* standard requires the debtors to demonstrate more than a stressed financial situation. As described by the Bankruptcy Appellate Panel for the Ninth Circuit:

> In defining undue hardship, courts require more than temporary financial adversity, but typically stop short of utter hopelessness. The proper inquiry is whether it would be "unconscionable" to require the debtor to take steps to earn more income or reduce her expenses.

*In re Birrane*, 287 B.R. 490, 494 (9th Cir. BAP 2002)(citing *In re Nascimento*, 241 B.R. 440, 445 (9th Cir. BAP 1999)).

The Plaintiffs' methodology applies Mr. Freeland's 28 day pay period to the family's monthly budget cycle. The approximate two-day difference makes the budget appear tighter than it may actually be. The record in this case shows that the Plaintiffs receive net pay of $2,214.97 every two weeks, or $57,589 per

Page 3 - MEMORANDUM OPINION

year. Their "steady monthly expenses" of $4,357 come to $52,284 per year ($4,357 x 12). The difference is $5,305 per year, or $442 per month.

The point of these calculations is to demonstrate that the Plaintiffs are presently capable of maintaining a budget which has room for payments of their student loan obligations. It follows that it is not unconscionable to require Plaintiffs to maintain that budget, even if it is necessary to reduce some of their higher expenditures (such as the $1,400 per month grocery bill) and forego as many of the so-called variable expenses as possible.

As noted, Plaintiffs may enroll in a program, established by statute, which will limit their payments to less than $300/month as long as their income remains stable. Future payments may vary according to increases or decreases in their income. At the end of 25 years, any remaining balance would be forgiven. The effect of this benefit on the *Brunner* analysis has been the subject of many diverse opinions. *See* "Judges?! We don't Need No Stinking Judges!!! The Discharge of Student Loans in Bankruptcy Cases and the Income Contingent Repayment Plan." 38 Tex. Tech. L.Rev (2005). The ICRP and IBRC programs were enacted by Congress after the *Brunner* standard was adopted by most courts. The challenge to the courts has been reconciling the Code's provision for discharging student loans, as interpreted and implemented by *Brunner*, and the Congressional policy of relieving distressed borrowers through reduced payments and eventual forgiveness.[3]

Many of the cases cited in the Texas Tech article argue that requiring debtors with student loans to avail themselves of government loan assistance programs undermines, or even negates, Code § 523(a)(8), and encroaches on the court's role in determining whether student loan claims should be discharged. However, the issue is not a matter of whether the judiciary or the executive determines the outcome. Courts are obligated to construe the various statutes and the regulations implementing those statutes, in a manner that renders them consistent with each other. *See Anderson v. U.S.,* 803 F.2d 1520, 1523 (9th Cir. 1986) (internal

---

[3]This court had occasion to discuss this issue in an unpublished opinion in *Cianciulli v. Student Loan Marketing Association (In re Cianciulli)*, 03-6037 (Bankr. D.Or. 2005).

Page 4 - MEMORANDUM OPINION

citation omitted); *Rust v. Sullivan*, 500 U.S. 173, 184 (1991).  Thus, the Bankruptcy Code's directive that student loans be excepted from discharge unless they impose an undue hardship (as determined in this and other Circuits under the *Brunner* test) must be construed in light of Congressional and executive enactments providing for repayment of loans by low income or other distressed borrowers.  It follows that bankruptcy courts may, and in most instances should, take the availability of reduced payment plans into account in determining whether it would be unconscionable to require repayment of student loan debt.

Plaintiffs resist application of the IBRP on several grounds, notably that if they attempt and fail to pay the loans through an available program they will be worse off than when they started (i.e. accrued but unpaid interest will be added to the principal).  They also question whether the "forgiveness" of the balance of the loan at the end of 25 years (assuming full compliance) is guaranteed to them.  These concerns overlook two aspects of their case:

First:  ECMC has presented evidence of the repayment plan as it now exists, and its offer to make the program available to the Plaintiffs.  See ECMC's Exh. 9.  Moreover, it is explicit in ECMC's defense of the case that a reduced payment plan will be available if the Plaintiffs apply for it.  These assurances are a factor in the court's analysis:  if this proves to be unfounded - in other words, if the Plaintiffs promptly apply for the program presented in Exh. 9, or a similar program, and are rejected - the court would be constrained to revisit this decision.[4]

Second:  a judgment denying the relief sought by the Plaintiffs is necessarily limited to the circumstances existing at the time the case was tried.  The judgment does not preclude a future bankruptcy complaint and discharge of the student loans, if the Plaintiffs' circumstances change significantly.  *See e.g. Brunner*, 831 F.2d 395, *ECMC v. Jones*, 1999 WL 1211797 (E.D.Va. 1999).

Since the plaintiffs have not sustained their burden of proof under the first *Brunner* element, it is neither necessary nor appropriate to consider the remaining two.  *Pa. Higher Educ. Assistance Agency v.*

---

[4]Parties are cautioned, however, that the court's authority to relieve plaintiffs from the effect of a judgment entered in this case is not without limits.  Fed. R. Bankr. P. 9024.

Page 5 - MEMORANDUM OPINION

*Birrane (In re Birrane)*, 287 B.R. 490, 496 (9th Cir. BAP 2002), *In re Roberson*, 999 F.2d 1132, 1135 (7th Cir.1993). The Court's authority to enter a money judgment in a discharge case is premised on the need to liquidate the claim in order to determine the amount subject to discharge. Since no discharge is available respecting ECMC's claim, there is no occasion to liquidate it in these proceedings.

    To summarize, Plaintiffs' evidence does not support a finding that they are unable to pay their student loans according to the terms available, and maintain a reasonable standard of living. For that reason, the relief they seek - discharge of their student loans -- must be denied, and this adversary proceeding must be dismissed. Each party will bear its own costs and fees associated with this proceeding. Counsel for Defendant should submit a form of judgment consistent with this memorandum, which constitutes the Court's findings of fact and conclusions of law.

FRANK R. ALLEY, III
Chief Bankruptcy Judge